HARRIS, et al. *v.* AMERICAN MOTORIST INSURANCE Co., et al.

No. 41691 February 13, 1961 126 So. 2d 870

*Johnson & Johnson, Clyde Mullins, Berger, Callon & Zuccaro,* Natchez, for appellants.

*Laub, Adams, Forman & Truly,* Natchez, for appellees.

RODGERS, J.

This case came up from the Chancery Court of Adams County, Mississippi. George Q. Daniels and Charlene Harris filed their suit against the American Motorist Insurance Company, George Guido and Edward Foley, its local agents. From an adverse judgment, complainants appealed.

The defendant American Motorist Insurance Company sold an automobile public liability policy to the appellant George Q. Daniel through its agents George Guido and Edward Foley covering a period from January 20,

1955, to January 20, 1956. This policy was in full force and effect on the 18th day of April 1955. The policy contained the following provisions: The insurance company agreed to "pay on behalf of the insured all of the sums which the Insured shall become legally obligated to pay as damages because of bodily injuries, sickness or disease, including death anytime resulting therefrom, sustained by any person caused, arising out of the ownership, maintenance, or use of said automobile." The insurer further agreed to "defend any suit against the Insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent: but the company may make such investigation, negotiation, and settlement of any claim or suit as it deems expedient."

The policy also required that the insured give notice as follows:

"2. Notice of Accident.

### Coverages A, B and D

When an accident occurs written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

"7. Action Against Company.

### Coverages A and B

No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written

agreement of the insured, the claimant and the company.

"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability."

On April 18, 1955, the appellant George Q. Daniels drove his automobile along Pine Street in the City of Natchez, Mississippi, about dark, and ran into and against the appellee Charlene Harris, a Negro girl, near Hello Grocery. He continued down the street and parked near the curb and went to sleep. Some time later the police found the defendant and informed him that he had "hit some colored girl." He was then arrested, taken to the alleged scene of the accident, and later incarcerated in jail. The next morning he made bond and was released without a trial. He denied that he ran against Charlene Harris, nevertheless he was charged with "drunken driving" and "leaving the scene of an accident." He heard nothing more from this accident until May 24, 1956, at which time he was served with a summons and learned that Charlene Harris had entered suit against him for the alleged accident. When the suit was filed George Q. Daniels carried the summons to the insurance agents and advised them about it, but the first notice given to the insurance company by insured was after May 24, 1956. Some time later, the appellant George Q. Daniels delivered the insurance policy above-mentioned to the agents of insurer, George Guido and Edward Foley, and the policy was cancelled. He claims that at the time he delivered the policy to the insurance agents, at their request, that the agents advised him that they would "take

care of the Harris claim.'' The appellant had talked to the insurance agents before his policy was cancelled and the agents not only knew about the Harris claim but had turned it over to an adjuster for the insurance company. The appellee insurance company employed one Louis Bills, an adjuster, to investigate the claim. It is said that the adjuster requested that the case be postponed so as to give him time to investigate it, and as a result thereof the case was postponed until January 1957. The adjuster actually investigated the case, talked to all of the witnesses, and reviewed the medical reports. After the investigation was concluded, the insurer, American Motorist Insurance Company, wrote a letter dated July 2, 1956, addressed to Q. C. Daniels denying coverage in the case of Harris v. Daniels, stating ''the reason for this disclaimer is that although the accident and its immediate consequence were well known to you, you have made no report to us under the terms of the policy within a reasonable time.''

George Q. Daniels then employed an attorney to represent him in the Harris case and agreed to pay him $500. Charlene Harris obtained a judgment against the defendant George Q. Daniels in the sum of $3,000 damages because of said accident. Execution was then issued, and served upon Daniels, and it developed that he was insolvent. Daniels then assigned his interest in the policy to Charlene Harris, (except the right to recover attorney's fee expended by him.) Whereupon, Charlene Harris and George Q. Daniels filed their joint action against the defendant insurance company to recover the $3,000 due Charlene Harris for her injuries, and the $500 attorney's fee paid by George Q. Daniels in the defense of said suit.

The issues involved in this case are: (1) whether or not the failure to give notice required in the policy was excused because the appellant Daniels did not know or believe that he had injured Charlene Harris; (2) wheth-

er or not the activity of the insurance company in making an investigation of this case was a waiver of the required notice; and (3) the insurance company was thereby estopped because of such activity to forfeit the policy.

 A contract of insurance, like any other contract, must be interpreted as it is written, taking into consideration the intention of the parties and construed so as to give a reasonable construction to conserve the real and true purpose of the various clauses of the contract. State Mutual, etc. Insurance Company v. Watkins, 181 Miss. 859, 180 So. 78; 29A Am. Jur., Insurance, Sec. 1385, p. 500; Anno. 18 A. L. R., Sec. 5, p. 452; 45 C. J. S., Sec. 1053, p. 1276.

 Where a contract of insurance requires as a condition precedent to insurer's liability, that notice be given to the insurer within "a reasonable time" or "as soon as practicable" after an accident, or when a claim has been made or suit flied such notice must have been given by the insured, or someone in his behalf, within the time agreed upon, unless there is a reasonable excuse offered by or for the insured, for his failure so to do. 45 C. J. S., Insurance, Sec. 1047, p. 1272; Sec. 1055, p. 1278; Sec. 1056, p. 1280. Travelers' Indemnity Company v. Holiman, 174 Miss. 220, 164 So. 36; Young v. Travelers' Insurance Company, 119 F. 2d 877 (Miss.); Southern States Fire Insurance Company v. Hand-Jordan Company, 112 Miss. 565, 73 So. 578.

 The lack of insured's knowledge of the accident, or claim, may and often does excuse an insured from giving notice to the insurer until the time when the accident is brought to his knowledge. 45 C. J. S., Insurance, Sec. 1056 b, p. 1282; Young v. Travelers' Insurance Company, supra; Employers' Liability Assurance Corporation, Ltd. v. Jones County Lumber Company, 111 Miss. 759, 72 So. 152; Southern States Fire Insurance Company v. Hand-Jordan Co., supra; Bullock v. Fidelity &

Casualty Company of New York, 187 So. 93 (Miss.); Appleman's Insurance Law and Practice, Vol. 8, Sec. 4732, p. 94.

In the case of Fireman's Fund Indemnity Company v. Kennedy, 97 F. 2d 882, 123 A. L. R. 966, where it was argued that the driver of a suddenly stopped police patrol car, with the rear of which another car collided, did not know that an occupant thereof was seriously injured, and accordingly it was impossible for the driver to notify the insurer, the Court characterized this argument as "specious reasoning."

■■ ■ The fact that insured does not have to give notice until he has knowledge of the accident will not excuse him for failing to give notice when in fact he knew about the accident and through his negligence failed to comply with the reasonable notice clause required by the policy as a condition precedent to recovery. It has been said: "As a general proposition a mere mistake as a result of carelessness and inattention will not extend the time for giving notice or furnishing proofs of loss * * *" 29A Am. Jur., Insurance, Sec. 1387, p. 503. See also Aetna Life Insurance Company v. Walley, 174 Miss. 365, 164 So. 16; Anno. 7 A. L. R. 192; 76 A. L. R. 76; 18 A. L. R. 2d, Sec. 21, p. 473.

■■■ When an insured has knowledge of an accident involving the coverage under his insurance contract, it is his duty to exercise reasonable care, due diligence as a reasonable and prudent man, to acquire information about the accident, so that he may be readily informed about claims out of which damage may arise. 29A Am. Jur., Insurance, Sec. 1389, Sec. 504. Malloy v. Head, 4 Atl. 2d 875, 123 A. L. R. 941; Appleman's Insurance Law and Practice, Sec. 4742, p. 132.

■■ ■ It is not enough for the insured to act upon his own cursory knowledge of the facts; he must make an effort to know the facts. The insured may not without any investigation whatsoever rely upon his own opin-

ion, and where the insured's lack of knowledge resulted from his failure to perform his plain duty to act as a prudent man to discover the facts, insured cannot excuse his failure to give the required notice on the grounds that he did not know about the accident. Fireman's Fund Indemnity Company v. Kennedy, supra.

In the case of Houran v. Preferred Accident Insurance Company, 109 Vt. 258, 195 Atl. 253, in an automobile liability case, upon a finding that an assured driver, who was jailed after an accident, and then sent to a house of correction, failed to give notice to insurer as soon as was reasonably possible, and that no one did so in his behalf, it was decided that no recovery under the policy was possible.

■■ The facts in this case disclose that the insured George Q. Daniels was not only informed that he had an accident and "ran over some colored girl", but he was arrested, carried back to the scene of the accident and incarcerated in jail because of the accident. It is evident that this accident was brought forcefully to his attention, yet he did nothing about it. He gave no notice to his insurance company, and apparently cared nothing about it until he was sued by the injured girl thirteen months later. This Court therefore under the facts cannot say that the insured gave timely notice to the insurer.

The chancellor held that the insured failed to give the notice required by the policy and the chancellor is trier of fact. It has been said that the question whether an insured in an action on a policy indemnifying him from liability or bodily injury or death, gave timely notice, "as soon as practicable" is a question of fact to be determined by the jury or the chancellor. Malloy v. Head, supra. Houran v. Preferred Accident Indemnity Co., supra; Farm Bureau Mutual Auto Insurance Company v. Manson, 94 N. H. 389; 54 Atl. 2d 580; London Guarantee & Accident Company v. Shafer (Ohio), 35 F. Supp. 647; Anno. 18 A. L. R. 2d 504; 7 A. L. R. 187.

We therefore hold that the chancellor had ample testimony on which to base his decree, that the insured did not give timely notice as required by the insurance policy.

Appellants, however, claim that the insurance company has waived its right to claim a forfeiture on the grounds that the appellant George Q. Daniels gave no timely notice to the company that he had had an accident and the insurance company is thereby estopped to deny liability. The appellants say the insured is estopped for four reasons: (1) the insurance company had the case investigated by an adjuster; (2) the insurance company cancelled the policy after suit had been filed; and (3) the case was delayed so as to give the insurance adjuster more time to investigate the claim; and (4) there was no prejudice to the insurance company because of the failure of the insured to give timely notice; therefore insurance company cannot now forfeit the policy for lack of such notice.

The appellants cite the case of Southern States Fire Insurance Company v. Hand-Jordan, supra. It will, however, be noted that the required notice was given in that case by an attorney before the suit was filed. The appellants also cite the case of Fleming v. Travelers Insurance Company, 206 Miss. 284, 39 So. 2d 885. It will be observed in this case that timely notice was given by an attorney to the local agents. The case of Southwestern Fire and Casualty Company v. Kovar, 227 Miss. 386, 86 So. 2d 356, cited by the appellants, was a case tried in the Mississippi courts under the Texas law. This Court said in that case: "If notice may be given by persons other than insured or by someone in his behalf, which seems not to be the rule in Texas, the letter from the attorney on January 16, 1954, was not notice under the policy because it was not given within a reasonable time * * *" The notice in that case was delayed over a year after the accident. This case does not help the appellants claim in the case at bar.

The appellants also cite the rule that where an insurance company carries out an investigation of a loss under circumstances so as to lead the insured to believe that nothing more will be required of him, the company may be estopped. Anno. 18 A. L. R. 2d 495. Upon reading this reference we find cited under this rule the case of Leach v. Farmer's Auto Inter-insurance Exchange, 213 P. 2d 920, which we believe will explain the meaning of the above rule. In the Leach case, the insured gave oral notice to the insurer immediately upon learning of the claim and the insurance company took charge of the lawsuit, filed demurrers, accepted the notice and acted upon it before finally demanding the nonwaiver agreement. The Court said ''this was sufficient to lead assured to believe that no formal written notice would be required.'' In other words, the insurance company prevented the insured from complying with the policy by its action to the hurt of the insured and was thereby estopped to claim the insured should have given the notice.

■■ ■ The failure to furnish the notice, or proofs of the accident, within the required time may be waived by the insurer, or its general agent, and consists of some act on the part of the insurance company inconsistent with its claim that the policy has been inoperative through failure to furnish notice of accident, or proof of loss, within the time required or because of defects in those furnished, as furnishing blanks; receiving, retaining and acting upon the notices furnished without objecting thereto; demanding further information, or additional proofs; refusing to furnish blanks required; or requiring the insured to do some act or incur some expense, or trouble, inconsistent with the claim of forfeiture such as treating an agent as having authority to receive proof; or by a denial of liability on other grounds. Mere silence on the part of the insurer, however, is not sufficient to constitute a waiver. 1 C. Y. C.

274; 45 C. J. S., Sec. 1058, p. 1284; Sec. 1060, p. 1285; Sec. 1061, p. 1286; Sec. 1063, p. 1288.

This Court has recently held in the case of Hartford Accident & Indemnity Company v. Lockard, 239 Miss. 644, 124 So. 2d 849-855, that "appellant (insurer) was not estopped to deny coverage under the policy because of the alleged action of the appellant's claim agent in having the Fairley truck taken to a garage for repairs before completing his investigation of the accident."

In the case of Crooker v. Hollingsworth, 210 Miss. 636, 46 So. 2d 541, this Court has pointed out that in the case of Meyerkort v. Warrington, 19 So. 2d 433 (Miss.), it was said: "* * * in the absence of extremely persuasive circumstances, courts will not give effect to an estoppel where the parties are equally well informed as to the essential facts, or where the means of knowledge were equally open to them. 19 Am. Jur., p. 742; 31 C. J. S., Estoppel, Section 71, p. 272, and cases under note 98. * * * And, finally, there is the element essential to an equitable estoppel that the party who invokes it must have lost something or has been placed at some disadvantage by the conduct of the other party." ▆▆ This Court also pointed out in the case of Crowe v. Fotiades, 224 Miss. 422, 80 So. 2d 478, that "The essential elements of estoppel are conduct and acts, language or silence, amounting to a representation of concealment of material facts, with knowledge or imputed knowledge of such facts, with the intent that representation or silence, or concealment be relied upon, with the other party's ignorance of the true facts, and reliance to his damage upon the representation or silence." See also Izard v. Mikell, 173 Miss. 770, 163 So. 498.

▆▆ The question raised by the appellants, that the insurance company has not been prejudiced by the breach of the provisions in the policy requiring timely notice, was a question of fact to be determined by the chancellor. We cannot say that the chancellor was mani-

festly wrong in holding that "as a matter of fact, that the defendant (insurance company) suffered prejudice and was seriously hampered in making its defense." This is especially true since the insured gave no notice until suit was filed, more than thirteen months after the accident. See the Annotation under Prejudice to insurer, 18 A. L. R. 2d 506.

We have carefully read this record and we are unable to find any element of estoppel that caused the insurance company to waive the requirement to have timely notice. The trial court having passed upon the question of timely notice, and there being no estoppel in this case, the Court now holds that the case should be, and it is, affirmed.

Affirmed.

*Lee, Kyle, Arrington* and *Ethridge, JJ.,* concur.