STATE OF MISSISSIPPI ex rel., etc., et al., Plaintiffs,

Hinds County, Plaintiff-Appellant,

v.

J.W. "Jake" RICHARDSON, Defendant-Appellant,

v.

FORUM INSURANCE CO., Garnishee-Defendant-Appellee.

J.W. "Jake" RICHARDSON, Plaintiff-Appellant,

v.

FORUM INSURANCE CO., Defendant-Appellee.

No. 86–4320.

United States Court of Appeals, Fifth Circuit.

June 1, 1987.

---

David W. Clark, Wise, Carter, Child & Caraway, Jackson, Miss., for Hinds County.

L. Joe Lee, Jackson, Miss., for Richardson.

Thomas A. Bell, Gary K. Jones, Daniel, Coaker, Horton & Bell, Jackson, Miss., M. Nicole Marcey, Lord, Bissell & Brook, Chicago, Ill., for Forum Ins. Co.

Before WILLIAMS, JOLLY and DAVIS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

J.W. "Jake" Richardson served as Tax Collector for Hinds County, Mississippi from 1976 to 1980. During his tenure, Richardson failed to collect $401,304.04 in taxes he should have collected. Mississippi's Auditor of Public Accounts detected the shortage and sued Richardson for the loss on July 30, 1982. On October 18, 1982, Richardson signed a consent judgment in which he confessed his liability and agreed to pay the state and county the uncollected $401,304.04 plus interest and penalties of $485,286.14, for a total of $886,590.18.[1]

---

**1.** Mississippi actually sued both Richardson and the United States Fidelity and Guaranty Compa-

Mississippi also brought criminal charges against Richardson, and he eventually pleaded guilty to and was sentenced for "embezzlement" and "willful neglect of duties."

Hinds County submitted a claim for the uncollected taxes to the Forum Insurance Company, with which the County had a Public Officials Liability Insurance Policy. Forum refused to pay the claim. Then, the County filed a garnishment action against Forum in Mississippi state court. Forum removed the case to federal court because of diversity of citizenship. Richardson also sued Forum for failing to pay his consent judgment, and the district court consolidated these two suits for a single trial. After a trial on March 18, 1986, the district court ruled that Richardson and Hinds County had not given Forum the requisite timely notice of their losses and thus could not collect from Forum. Richardson and Hinds County filed a timely appeal, 634 F.Supp. 133. We affirm.

## I. *Factual Background*

We begin with a survey of the history of the relationship between Hinds County and the Forum Insurance Company, starting in 1981.

### A. *The Insurance Contract*

In April 1981, Hinds County obtained "Public Officials Liability Insurance" from Forum Insurance Company, effective May 1, 1981.[2] The "Insuring Clause" provided that

(a) [I]f, during the policy period, any claim or claims are first made against the Insureds, individually or collectively, for a Wrongful Act, [Forum] will pay ... the Insureds, or any of them ... for all loss which the said Insureds, or any of them, shall become legally obligated to pay as damages.

(b) [I]f, during the policy period, any claim or claims are first made against the Insureds, individually or collectively, for a Wrongful Act, [Forum] will pay ... [Hinds County] for all loss for which [Hinds County] may be required or permitted by law to indemnify such Insureds.

(c) [I]f, during the policy period, any claim or claims are first made against [Hinds County] as a result of a Wrongful Act, [Forum] will pay ... all loss which [Hinds County] shall become legally obligated to pay as damages.

The Insuring Clause also gave Forum "the right and duty to defend any suit against the insured seeking damages on account of [a] Wrongful Act."

Under the policy, the term "Insured" meant not only Hinds County itself but also any of the County's "duly elected or appointed officials." "Wrongful Acts" included "any actual or alleged error or misstatement or act or omission or neglect or breach of duty including misfeasance, malfeasance, and nonfeasance...." Forum even insured against "fraud or dishonesty" "unless a judgment or other final adjudication ... shall establish that acts of active or deliberate dishonesty or fraud ... was [sic] material" to the loss.

As a "condition precedent" to recovering for a claim under the policy, an insured had to give Forum "notice in writing as soon as practicable of any claim [and] such information and cooperation as [Forum] may reasonably require." The policy also stated that "notice of claim shall be given to Forum Insurance Co., 140 South State St., Chicago, Illinois 60603" and provided that "notice to an agent" of Forum would not excuse an insured from notifying Forum in writing as well.

---

ny ("USF & G"), which had executed two $100,-000.00 bonds to guarantee Richardson's performance on the job. After Richardson signed the consent judgment, USF & G paid $200,-000.00—the full amount of the bonds—to the County and state and filed a cross claim against Richardson for indemnification.

2. Initially, Forum listed the "Hinds County Board of Supervisors" as the "named insured" on the policy. In September 1982, Forum agreed to redesignate the named insured as "Hinds County," Richardson's employer. Whether Richardson's acts as Tax Collector preceded the period of coverage is not an issue in this appeal.

## B. *The Way to the Forum*

Hinds County had not procured its insurance directly from Forum. Instead, it had contacted a local, independent agent with which it had dealt before, Cook-Fox-Everett ("CFE"). CFE in turn had contacted an insurance wholesaler, Stuart Smith East, Inc., that dealt directly with Forum. Andrew Mattiece, the County's Deputy Chancellor Clerk, was in charge of obtaining insurance for the County, and he had dealt primarily with Bill Mathison and Carl Bush at CFE.

When Hinds County applied for insurance, it already knew that Richardson might have under-collected taxes. In an amendment to its application for insurance, the county revealed:

> The Mississippi State Department of Audit has taken exception to penalties and interest not collected by the Hinds County Tax Collector.

> At present there has been no formal demand placed on the Tax Collector or any other county official. No grand jury investigation ... or indictments have been made.

As the Audit Department's investigation developed, Hinds County and CFE had learned about Richardson's role in the tax shortage. On September 14, 1982, CFE's Bill Mathison wrote Forum that

> [A] claim is being made under this [Public Officials Liability] Policy. The claim involves Mr. Jake Richardson who was previously the Tax Collector for Hinds County. Mr. Richardson has been removed from his office by the Governor due to purported irregularities in the collection of penalties and interest by the Hinds County Tax Collector.

> Please advise what we need to do to proceed with this claim.

Mathison also included Andrew Mattiece's address and phone number in his letter. On the same day, CFE sent Forum a "Property Loss Notice," which reported Richardson's removal from office and stated that "a claim will be made under this policy."

Ruth Kahn, a commercial claims specialist with Forum, received the September 14 letter and was assigned the Hinds County case. At trial, Kahn testified by deposition that she tried several times between September 14 and October 18, 1982 to reach Andrew Mattiece by telephone to discuss the County's claim. Kahn finally wrote Bill Mathison for details of the County's "forthcoming claim" on October 19, 1982, the day after Richardson—unknown to Forum—had signed the consent judgment. Kahn wrote Mathison again on November 29, 1982, to request details about the County's loss.

On January 6, 1983, CFE's Carl Bush wrote Ruth Kahn to acknowledge receipt of her two letters and to promise a full explanation of the County's claim. Finally, on April 7, 1983, Hinds County's attorney sent Forum a copy of the original complaint against Richardson, the October 18 consent judgment, and USF & G's settlement for $200,000.00. In a cover letter sent with these documents, Hinds County stated: "[We] wish at this time to file a claim on [our] public officials liability policy to recover for [Richardson's] wrongful acts.... I would appreciate your informing me of what formal steps I need to take in order to submit this claim...."

On April 13, 1983, Forum wrote the County to deny coverage, claiming that the consent judgment established Richardson's "active or deliberate dishonesty or fraud." After receiving this denial, the County continued to demand payment of its claim and disputed the charge of "active or deliberate dishonesty or fraud."

Richardson did not contact Forum directly until October 10, 1983, when his attorney wrote a letter to Forum joining in the County's demand for payment. On March 27, 1984, Forum wrote Richardson's attorney to explain a second reason for denying coverage—that Forum received untimely notice of Richardson's loss.

## II. *"As Soon As Practicable"*

■ As set out above, the policy required an insured making a claim to notify Forum of any loss "as soon as practicable." The phrase "as soon as practicable" means

"within a reasonable time under all the circumstances to effectuate the objects and purposes of the notice clause." *Young v. Travelers Insurance Co.*, 119 F.2d 877, 880 (5th Cir.1941) (applying Mississippi law). Notice given so late that it is "unreasonable" or that prejudices the insurer bars recovery by the insured. *Id.*

A notice provision in an insurance policy is essential to giving the insurance company the chance to settle or litigate claims for which it ultimately might be liable. As we recently noted, timely notice enables the insurer "to investigate a claim against the [insured which may be] covered by the policy; to itself decide whether the claim should be settled without litigation, and, if not, to prepare its defense...." *Bolivar County Board of Supervisors v. Forum Insurance Co.*, 779 F.2d 1081, 1084 (5th Cir.1986) (interpreting Mississippi law) (emphasis omitted) (quoting *Aetna Life Insurance Co. v. Walley*, 174 Miss. 365, 164 So. 16 (1935) (*Bolivar* held that notice of a claim for reimbursement of attorneys' fees was *not* "as soon as practicable" when it was given *after* the claimant had spent $88,000 to litigate a suit)). As set out above, Forum had both the right and the duty to defend suits against its insureds. *See also* 7C J. Appleman, Insurance Law & Practice §§ 4681–4682 (W. Berdal ed. 1979) (insurance companies generally have this right). An insurer that refuses an opportunity to defend "will be precluded from relitigating any issues necessarily determined in the primary action," and may become bound to pay a judgment against an insured. *Id.* at § 4689.

### III. *Notice and Mississippi Agency Law*

The insurance policy provided that "notice to an agent or knowledge possessed by an agent ... shall not" excuse an insured from given written notice to Forum in Chicago. Miss.Code Ann. § 83–17–1, however, provides:

Every person who solicits insurance on behalf of an insurance company, or who takes or transmits, other than for himself, an application for insurance or a policy of insurance, or who ... gives notice that he will receive or transmit the same, or who shall review or transmit a policy of insurance of any such company, or who shall examine or inspect any risk, ... or do or perform any other act or thing in the making or consummation of any contract of insurance for or with any such insurance company, other than for himself, ... whether any of such acts shall be done at the instance or request or by the employment of the insurance company, ... shall be held to be the agent of the company for which the act is done ..., whatever conditions or stipulations may be contained in the policy or contract.

■ Under Mississippi law, notice given to an agent is imputed to the insurance company, regardless of provisions to the contrary in the policy itself. *National Life & Accident Insurance Co. v. Miller*, 484 So.2d 329 (Miss.1985); *American Fidelity Fire Insurance Co. v. Hancock*, 186 So.2d 212 (Miss.1966). Thus, notice to any of Forum's agents, as defined by Mississippi law, constitutes notice to Forum.

### IV. *CFE's Status as an Agent*

■ The district court found that CFE was not Forum's "agent" under Mississippi law, relying on the facts that CFE had no agency agreement with Forum and that CFE dealt only with Stuart Smith East, the insurance wholesaler, and never with Forum directly. We reverse this finding because the evidence—especially the trial testimony of Bill Mathison—establishes that CFE was Forum's "agent" under Miss. Code Ann. § 83–17–1.

Section 83–17–1 is written in the broadest terms; it creates agency relationships where they would not exist at common law. At trial, Mathison testified that he gave Hinds County a blank application form for Forum Insurance and then sent the completed form to Stuart Smith East for a quotation. Clearly, CFE "took or transmitted" the application to Forum via Stuart Smith East. Mathison explained at trial that insurance companies such as Forum study applications to decide whether to pro-

vide insurance, and, if so, how much to charge for coverage. Forum reviewed Hinds County's application and intended to profit by selling insurance to the County. CFE also relayed the quotation from Stuart Smith East to the County, thus performing an "act or thing in the making" of the contract.

The district court found that CFE advised the *County* and was the *County's* agent. We do not dispute that finding, but CFE *also* acted "on behalf of" or "for" Forum and was Forum's agent under § 83–17–1. Thus, Hinds County or Richardson could satisfy the notice requirement by giving notice to either CFE or Forum.

We now turn to analyze Richardson's and Hinds County's claims.

## V. *Richardson's Claim and the County's Garnishment Claim*

As set out above, Richardson sued Forum for failing to pay the judgment against him. In addition, the County, as Richardson's judgment creditor, brought a garnishment proceeding against Forum to obtain the insurance proceeds, claiming that Forum was liable to Richardson for the remainder of the consent judgment that Hinds County held against Richardson. *See* Miss.Code Ann. § 11–35–1 *et seq.*

Richardson, as an "elected or appointed official" of the County, was an "insured" under the policy. In addition, the Insuring Clause literally covers Richardson, because a "claim" was made against him, and he became "legally obligated to pay" damages. Forum, however, is not liable to Richardson unless it was given proper notice under the policy.[3] In turn, if Forum is not liable to Richardson, then the County's garnishment claim against Forum must fail.

## A. *Notice by Richardson*

The consent judgment established that Richardson became "legally obligated" to pay damages based on a "claim" against him. As set out above, the state sued Richardson on July 30, 1982, and he signed the consent judgment on October 18, 1982. It was virtually an entire year later before Richardson gave any notice to Forum of his claim. His attorney first contacted Forum on October 10, 1983. Any notice given after October 18, 1982 could not be "as soon as practicable," because Richardson's signing of the consent judgment deprived Forum of any opportunity to participate in and defend the litigation. Richardson's written notice of his own claim on October 10, 1983, obviously was not even close to being timely.

## B. *Notice by Hinds County*

■ There remains the question of whether Hinds County gave adequate notice on behalf of Richardson. The district court found that the County's contacts with CFE and Forum did not constitute timely notice of Richardson's claims. Even if the County could give notice on behalf of Richardson—a matter we do not decide—it did not.

We search the record to find evidence that Hinds County undertook to give notice under the policy on behalf of Richardson. There is none. Instead, Hinds County vaguely notified Forum that it may have suffered a loss of its own and that some claim involving its policy would be made. The record reveals the following facts:

### i. *Notice to CFE*

The district court found that CFE had not received notice "at the time of the September 14 letter." At trial, Andrew Mattiece, Deputy County Clerk, testified

---

3. As set out above the policy required notice "in writing" as a "condition precedent" to coverage. We recently reviewed Mississippi law and decided that an insured must comply literally with "conditions precedent," so that a breach of a "condition precedent" bars recovery even if the insurer suffers no prejudice by the breach. *Bolivar County Board of Supervisors*, 779 F.2d at 1085–86. *See also Hartford Accident & Indemni-* *ty Co. v. Hattiesburg Hardware Stores, Inc.,* 49 So.2d 813, 819 (Miss.1951) (insurer must show prejudice if insured breaches a provision not labeled a "condition precedent"); *Hood v. Fireman's Fund Insurance Co.,* 412 F.Supp. 846, 852 (S.D.Miss.1976) (citing *Pacific Insurance Co. v. Lovern,* 253 Miss. 804, 180 So.2d 290 (1965)). Thus, Forum had to receive *written* notice of Richardson's claim.

that he learned of the suit against Richardson shortly after it was filed on July 30, 1982 and that he talked "generally" with Bill Mathison of CFE about the County's tax shortage. Neither Mattiece nor Mathison, however, could recall the details of the conversations, such as when Mattiece told Mathison about the suit against Richardson, and neither could produce evidence of any written correspondence between Hinds County and CFE. Of course, by September 14, Mathison knew enough to send his letter and the Property Loss Notice to Forum. Nevertheless, the County failed to show that it gave written notice of Richardson's claim to CFE.

### ii. *Notice to Forum*

Before the October 18 consent judgment, Forum received three documents that mentioned Richardson's misconduct. First, Hinds County's amended application of April 1981 revealed that Mississippi's Audit Department "has taken exception" to Richardson's under-collection. Second, CFE's September 14 letter stated that "a claim is being made under this policy [that] involves Mr. Jake Richardson who ... has been removed from his office [of Tax Collector] due to purported irregularities in the collection of penalties and interest." Third, the Property Loss Notice that CFE sent to Forum in mid-September reiterated the facts that the Governor had removed Richardson from office and that "a claim will be made under this policy." [4]

Forum received Mathison's letter and the Property Loss Notice in September 1982.[5] The County's correspondence referred only to the County's loss and did not mention that a "claim" (the lawsuit) had been made against Richardson. Moreover, the district court found that "Forum was unable to do anything regarding the claim due to the failure of Mattiece, the named designee in

the policy, to return Kahn's telephone calls.... Forum satisfied its obligation to pursue the claim, but all efforts were foreclosed by Mattiece." This finding is supported by Kahn's testimony that she tried unsuccessfully to reach Mattiece by phone and by the fact that Kahn wrote Mathison about one month after receiving his September 14 letter.

In sum, neither Richardson nor Hinds County gave timely notice to Forum of *Richardson's* loss. Had Forum known about the suit against Richardson before October 18, 1982, it might have intervened or urged Richardson as part of his policy obligations not to sign a consent judgment. We must affirm the district court's conclusion on this issue as not clearly erroneous. *See* Fed.R.Civ.P. 52.

### VI. *Hinds County's Claim*

■ Hinds County pled only its right to garnishment. It did not plead that it suffered an insured loss itself. As set out above, however, the County wrote Forum on April 7, 1983, "to file a claim on [our] policy to recover for [Richardson's] wrongful acts." Thus, the County seemingly filed a claim for its own loss, which Forum denied. Much of the argument of the parties in the district court and on this appeal has been directed at such a substantive claim for loss by Hinds County under the policy, unrelated to garnishment to collect a judgment. We briefly, therefore, explain that Hinds County is not insured for the loss caused by Richardson's failure to collect taxes.

The insurance policy covers only "claims" against the insured. No "claim" has been made against the County, and the County has not, in the words of the policy, "become legally obligated to pay ... damages" to anyone. Moreover, the County does not contend that it is "required or

---

4. CFE, as the *County's* insurance agent, sent these documents to Forum for the County. As set out above, CFE acted as an agent for *both* the County and Forum.

5. Forum stamps incoming mail with the date on which it is received. The stamp on the September 14 letter shows that Forum received the letter in September, but the day of the month is

illegible. Ruth Kahn testified at trial by deposition that, when she received the September letters, she tried unsuccessfully to reach Andrew Mattiece by telephone to find out more about the "forthcoming claim." On October 19, 1982, she wrote Mattiece and Mathison for more information.

permitted by law to indemnify" Richardson. Thus, the plain meaning of the Insuring Clause reveals that Forum is not liable to the County for Richardson's failure to collect taxes.[6]

## VII. *Active or Deliberate Dishonesty or Fraud*

■ As set out above, the policy did not cover losses due to "active or deliberate dishonesty or fraud." We also point out briefly that this provision barred recovery by Richardson against Forum. For this reason, also, Forum owes Richardson no funds that the County can obtain by garnishment. Four state indictments charged that Richardson "did wilfully, unlawfully and feloniously defraud Hinds County ... by the wilful omission of [his] duties...." Richardson pleaded guilty in state court to the crimes of "wilful neglect of duties" and "embezzlement." Miss.Code Ann. §§ 97–11–25 through 97–11–31 proscribe various forms of embezzlement (§ 97–11–31 is a general catch-all section), and § 97–11–37 forbids a tax collector wilfully to neglect his duties. Richardson's pleas of guilty to these crimes established that he committed active or deliberate dishonesty or fraud, which forecloses recovery under Forum's policy.

## VIII. *Waiver*

■ When Forum finally received from the County in April 1983 the original complaint against Richardson and the consent judgment, it wrote the County to deny coverage, alleging that Richardson committed "active or deliberate dishonesty or fraud." Almost a year later, in March 1984, Forum wrote Richardson to deny coverage for a second reason, alleging that Richardson failed to give timely notice of his loss.

Richardson and Hinds County argue that Forum waived its objection to untimely notice when it denied coverage in April 1983 on other grounds. An insurer may waive the notice requirement by taking some action that is "inconsistent with [the] claim

that the policy has been inoperative through failure to furnish notice"—such as "a denial of liability on other grounds." *Harris v. American Motorist Insurance Co.,* 240 Miss. 262, 126 So.2d 870, 875 (1961). *See also United States Fidelity & Guaranty Co. v. Arrington,* 255 So.2d 652, 656 (Miss.1971) (denial of coverage on other grounds waived statutory requirement of proof of loss). A denial on other grounds effects a waiver only if the denial is "inconsistent" with an objection to late notice and if the insured detrimentally relied on the denial. *See Harris,* 126 So.2d at 875. According to the insureds, Forum's denial of coverage in April 1983—on the grounds that Richardson committed "active or deliberate dishonesty or fraud"—waived its objections to untimely notice.

Because the County's loss is not even covered by the policy, any waiver by Forum is inapposite. Regarding Richardson, we conclude that Forum did not waive its objection to untimely notice. When Forum rejected the County's claim in April 1983, it had not even heard from Richardson. After Richardson wrote Forum in October 1983, Forum denied coverage, alleging untimely notice. This was Forum's first opportunity to take any action at all with regard to Richardson's claim. The April 1983 denial did not prejudice Richardson and was not inconsistent with Forum's position that Richardson failed to give timely notice.

## IX. *Conclusion*

This opinion is prolix because of the wide ranging arguments of the parties. The statement of the result, however, can be simple and succinct. Neither Richardson nor the County on his behalf gave timely notice to Forum of Richardson's claim, and Richardson committed active or deliberate dishonesty or fraud which falls outside policy coverage. Richardson's claim against Forum fails. Because Forum is not liable to Richardson, the County's garnishment action to collect its judgment against Rich-

---

**6.** Richardson actually failed to collect both county and state taxes. As set out above, the state of Mississippi sued Richardson, but it has made no "claim" against Hinds County for the uncollected state taxes.

ardson also fails. In addition, the policy does not directly cover the County's loss. The judgment of the district court in favor of appellee Forum Insurance Co. must be affirmed.

AFFIRMED.